The American Rolex Watch Corporation, Petitioner v. Commissioner.
American Rolex Watch Corp. v. Commissioner
Docket No. 52402.
United States Tax Court
T.C. Memo 1956-142; 1956 Tax Ct. Memo LEXIS 151; 15 T.C.M. (CCH) 715; T.C.M. (RIA) 56142; June 19, 1956
*151 Petitioner was incorporated under New York law on January 29, 1948, as a wholly owned subsidiary of a Switzerland (patent) corporation. At the time of incorporation it purchased on open account from another Switzerland (Montres) corporation certain inventories of watches, bracelets, accessories, parts, tools, and other assets for a total price of $166,548.17. Included in this open account was an inventory of bracelets in the amount of $29,877.94. Later, in May 1948, the parent in order to supply petitioner with additional capital purchased the open account of $166,548.17 from Montres and then cancelled the debt due from petitioner in consideration for a like amount of petitioner's capital stock. Beginning about August 1, 1948, petitioner, due to competition, was forced to sell its bracelets at a substantial reduction in price. Petitioner reflected this market condition by writing down its bracelet inventory by $12,000 and at the end of the year it took its inventory on the basis of cost or market, whichever is lower. In order to reimburse petitioner for its loss on the bracelets sold after August 1, 1948, the parent issued to petitioner a credit note for $12,000 which petitioner *152 used to purchase additional merchandise from Montres. Held, in determining petitioner's tax liability for the fiscal year ended January 31, 1949, the credit of $12,000 represented a contribution of capital by the parent as paid-in surplus, rather than a reduction of the purchase price of bracelets as determined by the respondent. Ralph F. Anthony, Esq., for the petitioner. Clarence P. Brazill, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: Respondent determined a deficiency of $189.56 in income tax for the fiscal year ended January 31, 1949. The deficiency resulted from three adjustments totaling $18,287.90 made by respondent to the net loss of $17,385.23 reported by petitioner on its return which had the effect of converting the net loss into a net income of $902.67. The adjustments are: (a) Cost of goods sold decreased
$12,000.00
(b) Cost of goods sold decreased
5,887.90
(c) Traveling expense
400.00
Petitioner concedes the respondent was correct in making adjustments (b) and (c) but contests the correctness of adjustment (a). This is the only issue in the case. The facts were all stipulated and are summarized *153 below. [Findings of Fact] Petitioner is a corporation organized and existing under the laws of the State of New York, with its principal office at 580 Fifth Avenue, New York, N. Y., and is engaged in the sale of Rolex and Tudor watches and related accessories at wholesale. Petitioner's income tax return for its first year of operation, which was its fiscal year ended January 31, 1949, was filed with the collector of internal revenue (now director) for the third district, New York. Petitioner reports its income on an accrual basis. Prior to February 18, 1948, Rolex and Tudor watches were sold to jewelers in the United States through a sales agency which operated under the name of Rolex Watch Company, Inc., with offices at 580 Fifth Avenue, New York, N. Y., none of whose stock was owned by petitioner or any of its affiliated companies. This agency operated under a contract between it and Montres Rolex S. A. [1] (a corporation organized and existing under the laws of Switzerland), a wholly owned subsidiary of Rolex Holding Geneve, [2] under date of November 5, 1945. This sales agency arrangement was terminated by the mutual consent of the parties to the agreement on February 16, 1948. *154 Rolex Watch Company, Inc., had operated on a firm basis by purchasing goods outright from Montres. At the time of the termination of this agreement with Montres, Rolex Watch Company, Inc., had in its inventory watches, bracelets, accessories, parts, and tools which had been purchased from Montres and had a landed cost value of $149,609.26. Pursuant to the agreement of February 16, 1948, Montres (also known as The Rolex Watch Co., Ltd., Geneva) purchased the inventory of watches, bracelets, accessories, parts, and tools at their landed cost value of $149,609.26, together with a mixed aggregate of other assets having a value of $16,938.91, or a total of $166,548.17. The parent company is a holding company incorporated under the laws of Switzerland. It caused petitioner to be incorporated for the purpose of conducting the activities formerly handled by the sales agent, Rolex Watch Company, Inc. Petitioner was incorporated under the laws of the State of New York with an authorized stock of $100,000, and the parent company subscribed to this entire capital stock and paid to *155 petitioner $100,000 in cash representing the par value of the stock. On February 18, 1948, petitioner commenced operations, and on that same date Montres sold to petitioner on open account the assets which it had purchased from Rolex Watch Company, Inc., at the price of $166,724.87. Petitioner, as a result of this transaction, made the following journal entries in its books of account on February 18, 1948: DEBIT:
Inventory of Watches
$79,142.32
Inventory of Bracelets
29,877.94
Inventory of Accessories
4,167.44
Inventory of Parts
35,220.50
Inventory of Tools
1,201.06
Furniture and Fixtures
7,810.48
Leasehold Improvements,
580 Fifth Avenue
7,725.82
Prepaid Insurance
1,579.31
CREDIT: Montres Rolex S. A.
$166,548.17
Accrued New York City Sales and
Use Tax
176.70
After petitioner had been in operation for a short time, the directors of petitioner and the officials of the parent company decided that it would be necessary to increase the working capital. Accordingly, on May 24, 1948, with the approval of the Secretary of State of the State of New York, the authorized capital of petitioner was increased from $100,000 to $300,000. In *156 anticipation of the need for more capital on the part of its wholly owned subsidiary, the parent company purchased the credit held by Montres against petitioner from Montres for the amount of $166,548.17, this being the same amount set up by petitioner on its books on February 18, 1948. The parent company subscribed to the entire increase in the capital of petitioner by paying therefor cash in the sum of $33,451.83 and by cancellation of the debt due from petitioner in the amount of $166,548.17. This transaction was set up on the books of account of petitioner on May 31, 1948, as follows: DEBIT:
Subscriber to capital
stock
$ 33,451.83
Montres Rolex S. A.
166,548.17
CREDIT: Capital stock authorized
$200,000.00
To record issue of additional 2,000
shares of capital stock to Rolex
Holding Geneve through the fol-
lowing transactions: On May 10, 1948, Montres Rolex
S. A. assigned the amount due it,
($166,548.17) due from The Ameri-
can Rolex Watch Corporation to
Rolex Holding Geneve after re-
ceipt of $33,451.83 in cash by The
American Rolex Watch Corpora-
tion from Rolex Holding Geneve,
the 2,000 shares were issued to
Rolex Holding Geneve.
*157 As a result of the foregoing transactions, the parent company owned the entire authorized and issued capital stock of petitioner in the amount of $300,000, and petitioner had received the equivalent in cash and other property. As of August 1, 1948, petitioner had in its inventory the following Swiss bracelets which had been sold to it by Montres on February 18, 1948: Steel and gold expansion bracelets
820 Units
Steel and gold mesh bracelets
128 Units
Steel bracelets
498 Units Subsequent to August 1, 1948, petitioner was selling these bracelets at reduced prices and proposed to write-down its inventory by $12,000. Petitioner advised the parent company of the proposed write-down and the parent company issued a "credit note" in favor of petitioner in the amount of $12,000. On August 31, 1948, petitioner made the following entry on its books of account: DEBIT: Rolex Holding
Geneve - Special Credit
$12,000.00
CREDIT: Inventory Bracelets
$12,000.00
To record credit received from Swit-
zerland to cover bracelet inven-
tory adjustment.
Petitioner applied the $12,000 credit against its account with Montres covering purchases by petitioner *158 in August and September 1948. Petitioner reflected this by the following entries in its books of account on December 31, 1948: DEBIT: accts. pay. - Mon-
tres Rolex, S. A.
$12,000.00
CREDIT: To Rolex Geneve - Special
Credit
$12,000.00
To apply special credit to former ac-
count.
As of January 31, 1949, petitioner wrote down its parts inventory and made the following entry on its books: DEBIT: Montres Rolex
S. A.
$5,887.90
CREDIT: Material Inven-
tory
$5,887.90
[Opinion] At the time petitioner filed its income tax return, it changed its position regarding the two above-mentioned credits of $12,000 and $5,887.90. It treated these two amounts as a part of its cost of goods sold and set up a "Paid-in or capital surplus" of $17,887.90 in its balance sheet as of January 31, 1949. As previously stated herein, petitioner now concedes that it is not entitled to set up the $5,887.90 item as a paid-in surplus and that the respondent was correct in treating it as a reduction of the cost of goods sold. It contends, however, that the $12,000 item was clearly a contribution of capital by the parent company; that it erred when it originally *159 credited the amount to the bracelet inventory account instead of to paid-in or capital surplus; but that at the time it filed its return it corrected this error to correspond with the true facts. The respondent, although conceding that it is well established [3] that the facts and not book entries control in the determination of taxable income, takes the position that petitioner has not shown that the crediting by petitioner of the $12,000 item to the bracelet inventory account was incorrect and that the parent company intended to make a contribution to petitioner's capital. The respondent insists that the transaction was no more than a reduction of the purchase price of the bracelets from Montres. We do not agree with the respondent's determination in this case. At the time petitioner was organized, it purchased from Montres certain inventories of jewelry and other assets for a stated consideration on credit. Petitioner was in need of additional capital and in order to supply *160 this need, its sole stockholder, the parent company, purchased from Montres at par the account which petitioner owed Montres and then forgave petitioner's indebtedness on the account in return for additional capital stock of a like amount. Later in the year petitioner advised the parent company of petitioner's proposed write-down of the bracelet inventory. At that time petitioner's account payable given by it for the bracelet inventory had long since been satisfied in full in the manner set forth above. In order, however, to reimburse petitioner for the loss it would sustain on the bracelets, the parent company made a further contribution to petitioner's capital by issuing to petitioner a credit note for $12,000. Petitioner used the credit note to pay for additional merchandise it had purchased from Montres during August and September of 1948. Ordinarily an adjustment of the purchase price can be made only by the seller of the goods. Here, there was no credit made by the seller but instead there was a contribution of capital made by petitioner's sole stockholder. It is true that the parent company here also owned all the stock of Montres. In his brief, the respondent argues that intercorporate *161 transactions of the nature here present require special scrutiny to prevent tax avoidance. That may be true but we do not think the loss from the sale of the bracelets is any the less real because the parent company chose to keep petitioner's capital intact by a further contribution of capital to cover the loss it was sustaining on bracelets purchased from a third party. It follows that instead of a net income of $902.67, petitioner had a net operating loss of $11,097.33 and no tax liability. Decision will be entered under Rule 50. Footnotes
1. Sometimes referred to herein as Montres. ↩
2. Sometimes referred to herein as the parent company.↩
3. See ; ; and .↩